KLIEBERT, Judge.
The defendant, Joyce Gary, the buyer, brings this suspensive appeal from a judgment awarding to the plaintiff, Kelly Lewis, the seller, liquidated damages of $11,-400.00 (10% of the purchase price) plus attorney fees of $3,472.50, for breach of an agreement, entered into on July 15, 1980, for the purchase of a house located in Sli-dell, La. At the time the agreement was executed, the buyer was voluntarily separated from her husband. On appeal, the buyer alleges two specifications of error: (1) the trial judge failed to find the agreement was subject to a suspensive condition, and (2) the trial judge failed to hold seller, rather than the buyer, breached the agreement. In the event this court upholds the *1238 trial judge’s finding, as to the breach, the buyer alternatively argues for a credit against the rents and security deposit paid to the seller, while the buyer was in possession of the house. We affirm the trial judge’s decision, and reject the alternative argument.
The seller was occupying a house and lot he built in Slidell which was listed with a realtor in the Slidell area. The buyer, having three years of college courses, with a major in real estate, and fifteen years of experience in real estate marketing, contacted the seller seeking, according to her testimony, a lease with an-option to purchase the house occupied by the seller. On the same day the seller moved out of the house, the buyer moved in, paying a $500.00 security deposit for damages and $800.00 for the first month’s rent.
Subsequently, according to the buyer, the seller submitted to her an agreement to purchase, which was not a lease with an option to buy as she wanted. After approximately one month of negotiations, consultations with her attorney, the submission of addendums to the agreement, some of which were recommended by her attorney, they entered into the agreement to buy and sell which is at issue in this suit.
The agreement is on the standard printed form used by realtors in the area and provided for a deposit of $11,400.00 (10% of the purchase price) which was posted by the buyer in the form of a promissory note and called for the passage of the Act of Sale before purchaser’s notary on or before September 30; 1980. Under the agreement, the security deposit of $500.00 plus rentals of $800.00 per month were to be credited against the purchase price at the passage of the sale. The mortgage on the house was to be assumed by the buyer.
At the buyer’s request, based on the contention that she did not have the funds to make the purchase, by mutual agreement, sometime in September, 1980, the parties agreed to extend the passage of the Act of Sale to January 31, 1981. All other terms and conditions of the sale were to remain the same; except henceforth, only a sum equal to the portion of the monthly loan payments applied to the principal of the loan were to be applied as a credit against the purchase price instead of full monthly rentals.
In November, 1980, the buyer informed the seller she and her husband had reconciled; therefore, she would not go through with the Act of Sale then scheduled for January 31, 1981. By letter dated December 4,1980, the seller, through his attorney, informed the buyer the refusal to pass the sale as scheduled on January 31,1981 would constitute a breach and result in the seller filing suit to enforce the agreement. When no response was made to the letter or to a subsequent one dated January 7, 1981, by letter dated January 16, 1981, the seller’s attorney set the sale for January 31,1981 at his office. In response, the buyer’s attorney, by letter dated January 29, 1981, informed the seller, through his attorney, the buyer would not appear at the January 31, 1981 sale because the sale was conditioned upon the buyer’s obtaining funds for the purchase price from a settlement of the community of acquets and gains and the occurrence of a suspensive condition; namely, the performance of repairs by the seller. When the buyer did not appear for the passage of the sale, the seller brought this suit for specific performance or damages.
In the trial court and here, counsel for the buyer argues that the reconciliation between the buyer and her husband, and the seller’s failure to make the repairs called for in the agreement rendered the agreement null and void. The argument is legally based on the provisions of Civil Code Articles 2021 and 2043[1] and factually *1239 grounded in the following addendums to the agreements:
ADDENDUM # 1
AMENDMENT TO AGREEMENT TO PURCHASE
BETWEEN JOYCE S. GARY AND KELLY S. LEWIS
RE: 311 ROYAL DRIVE, SLIDELL, LOUISIANA
This agreement shall be null and void if the sewerage system problems are not totally repaired to the satisfaction of Joyce S. Gary, whether those problems are the responsibility of seller, subdivision developer, building contractor or any other individual and/or firm.
S/ Joyce S. Gary
JOYCE S. GARY
S/ Kelly S. Lewis
KELLY S. LEWIS
This agreement shall also be null and void if Purchaser is not acceptable by the Mortgage Company, for the assumption of said existing mortgage loan.
S/ Joyce S. Gary
Joyce S. Gary
S/ Kelly S. Lewis
Kelly S. Lewis
ADDENDUM #2
THINGS TO BE DONE BEFORE ACT OF SALE:
1. Plans to house.
2. Garage side door fixed from leakage when it rains.
3. Fasher board installed in first bathroom.
4. Fix broken switch for ceiling fan.
5. New boards installed to secure house from rats to be painted.
6. One glass bulb type fixture in dining room broken.
One of the difficulties with the buyer’s position is that the record does not factually support the legal argument. Necessary to counsel’s legal argument is a factual finding that the seller was obligated to, but did not perform the repairs called for by the agreement. Counsel for the buyer contends the seller’s failure to repair the sewerage system to the buyer’s satisfaction was the basis for the buyer’s refusal to perform in accordance with the agreement.
The testimony of the seller and of his plumber and carpenter supports the conclusion that the agreed upon repairs were in fact made. The only evidence submitted by the buyer to contradict the seller’s evidence was the testimony of Mr. Segher, a plumber, who testified that he visited the property on January 29, 1981 and found a bleeder line running from the field bed into an open drainage ditch. He saw no connection to the four inch subdivision bleeder line. Since he made only a visual examination of the system and did not go into the house, he was not in a position to nor did he testify as to what, if anything, was wrong with the system. Rather, the essence of his testimony was that he would have to get into the system to determine what was wrong. At the time of his examination, the house had been vacated by the buyer for two months. On the other hand, Mr. St. Pierre, a plumber who was thoroughly familiar with the system, testified that he inspected the system after the buyer moved out and found it to be working properly and that it was tied into the subdivision bleeder line.
Additionally, although counsel for the buyer contends title to the property was not accepted because of the seller’s failure to make the repairs, particularly to the sewer system, the essence of his client’s testimony was that she no longer needed the house due to the reconciliation with her husband; therefore, she decided not to go through *1240 with the purchase and so informed the seller.
It is true the seller admitted he had not submitted the plans of the house to the buyer (as per Addendum # 2). He also testified, however, that the buyer had agreed that delivery of the plans at the time the sale was passed would be satisfactory. In any event, there was no obligation to deliver the plans at a particular time; therefore, we hold delivery at the Act of Sale would have been sufficient compliance with the requirements of the agreement.
Furthermore, we note Civil Code Article 1932[2] and the Supreme Court’s ruling in Andrew Development Corporation v. West Esplanade, 347 So.2d 210 (1977) and the cases recited therein. Under those authorities “Where a party refuses and does not merely fail to comply with his contractual obligation, his refusal constitutes an active breach of the contract which relieves the other party of continuing to perform under the contract.” In the light of the buyer’s testimony here, we hold the buyer actively breached the agreement by manifesting her unwillingness to perform under the contract more than two months before the date set for the passage of the sale.
There is no indication in the agreement that the sale was conditioned upon the buyer’s receipt of funds from the anticipated partition of the community of acquets and gains then existing with her husband. Moreover, the buyer’s testimony conclusively shows she knew the risk she was running at the time she executed the agreement and that the seller wanted an agreement to purchase and not an option to purchase which would have avoided the risk of a timely partition or of no partition. The buyer totally failed to prove the agreement was conditioned upon the buyer’s receipt of funds from the partitioning of the community.
For the reasons above stated, we hold the buyer’s primary assignment of error is without merit. For the reasons which follow, we hold the buyer’s alternative assignment of error is without merit.
Although the agreement provided for a credit against the purchase price for the security deposit and the monthly rentals, there was no agreement the credit would also apply against liquidated damages. Additionally, the seller’s testimony that the damage deposit of $500.00 was used to repair damages to the carpet and stairway and those caused by the buyer’s improper effort to install an icemaker was uncontradicted. Therefore, we see no reason why the seller should be deprived of the rental payments or the damage deposit paid by the buyer for the occupancy of the house pending passage of the sale.
The trial judge awarded to the seller attorney fees of $3,472.50 based upon 46.3 hours of work at $75.00 per hour. The seller requests additional fees of $1,500.00 for the appeal. We believe the $3,472.50 fee awarded by the trial judge is sufficient to cover the trial and the appeal.
Accordingly, the judgment of the trial court is affirmed. All costs of the appeal to be borne by the buyer.
AFFIRMED.

. Article 2021. Conditioned obligations, definition. Conditioned obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; if the obligation takes effect immediately, but is liable to be defeated when the event happens, it is then a resolutory condition.
Article 2043. Kinds of suspensive conditions, effective date of obligations. The obligation contracted on a suspensive condition, is that which depends, either on a future and uncer *1239 tain event, or on an event which has actually taken place, without its being yet known to the parties.
In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.

. “When.there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action.”